**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| STATE OF MICHIGAN, ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CASE NO.:  10-CV-4457 |
| | ) | |
| UNITED STATES ARMY CORPS | ) | Judge Robert M. Dow, Jr. |
| OF ENGINEERS, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are (1) Proposed Intervenor-Defendant City of Chicago's motion to intervene or for leave to participate *amicus curiae* [34], (2) Proposed Intervenor-Defendant The Coalition to Save Our Waterways' ("Coalition") motion to intervene [54], and (3) Proposed Intervenor-Defendant Wendella Sightseeing Company, Inc.'s ("Wendella") motion to intervene or for leave to participate *amicus curiae* [63].  For the reasons stated below, all three motions to intervene [34, 54, 63] are granted and the City of Chicago, the Coalition, and Wendella are given leave to intervene as Defendants in this action.  This case remains set for oral argument on August 23, 2010, at 9:30 a.m.

**I.      Background**

Defendants, the United States Army Corps of Engineers ("Corps") and the Metropolitan Water Reclamation District of Greater Chicago ("District"), have created, maintained, and continue to operate and control facilities within the Chicago Area Waterway System ("CAWS") that link Illinois waters to Lake Michigan and other connected waters.  On July 19, 2010, the States of Michigan, Wisconsin, Minnesota, Ohio, and Pennsylvania (collectively the "States") filed a complaint against the Corps and the District (collectively "Defendants").  Plaintiffs ask

the Court to issue a preliminary and permanent injunction enjoining Defendants to take all available measures, consistent with the protection of public health and safety, to prevent the emigration of bighead and silver carp (collectively "Asian Carp") through the CAWS into Lake Michigan. The measures sought by Plaintiffs include, but are not necessarily limited to, the following:

> (i) using the best available methods to block the passage of, capture or kill bighead and silver carp that may be present in the CAWS, especially in those areas north of the O'Brien Lock and Dam;

> (ii) installing block nets or other suitable interim physical barriers to fish passage at strategic locations in the Calumet River between Lake Calumet and Calumet Harbor;

> (iii) temporarily closing and ceasing operation of the locks at the O'Brien Lock and Dam and the Chicago River Controlling Works except as needed to protect public health and safety;

> (iv) temporarily closing the sluice gates at the O'Brien Lock and Dam, the Chicago Controlling Works, and the Wilmette Pumping Station except as needed to protect public health or safety;

> (v) installing and maintaining grates or screens on or over the openings to all the sluice gates at the O'Brien Lock and Dam, the Chicago River Controlling Works, and the Wilmette Pumping Station in a manner that will not allow fish to pass through those structures if the sluice gates are opened;

> (vi) installing and maintaining block nets or other suitable interim physical barriers to fish passage as needed in the Little Calumet River to prevent the migration of bighead and silver carp into Lake Michigan, in a manner that protects public health and safety;

> (vii) as a supplement to physical barriers, applying rotenone at strategic locations in the CAWS, especially those areas north of the O'Brien Lock and Dam where bighead and silver carp are most likely to be present, using methods and techniques best suited to eradicate them and minimize the risk of their movement into Lake Michigan; and

> (viii) continuing comprehensive monitoring for bighead and silver carp in the CAWS, including resumed use of environmental DNA testing.

Plaintiffs also ask the Court to enter an injunction requiring the Corps to expedite the preparation of a feasibility study which develops and evaluates options for the permanent physical separation of the CAWS from Lake Michigan at strategic locations so as to prevent the transfer of Asian Carp or other invasive species between the Mississippi River Basin and the Great Lakes Basin, and to enter a judgment requiring Defendants to implement, as soon as possible, permanent measures to physically separate Illinois waters from Lake Michigan.

On July 27, 2010, the City of Chicago filed a motion to intervene or for leave to participate *amicus curiae* [34], followed by the Coalition on August 4 and Wendella on August 5. The parties have completed briefing on the motions to intervene. Plaintiffs oppose all three motions, while Defendants do not oppose any of the motions.

## II.    Analysis

### A.    Intervention as of Right

Federal Rule of Civil Procedure 24(a)(2) establishes four requirements for intervention as of right: (1) the applicant must seek to intervene in a timely manner; (2) the applicant must claim an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest; (4) existing parties must not be adequate representatives of the applicant's interest. *Sokaogon Chippewa Community v. Babbitt*, 214 F.3d 941, 945-46 (7th Cir. 2000); *Wade v. Goldschmidt*, 673 F.2d 182, 185 (7th Cir. 1982). The Seventh Circuit has stressed that "[i]ntervention as of right will not be allowed unless all requirements of the Rule are met." *Sokaogon Chippewa Community*, 214 F.3d at 946. However, Courts should construe Rule 24(a)(2) liberally and should resolve doubts in favor of allowing intervention. *See Miami Tribe of Okla. v. Walden*, 206 F.R.D. 238, 241 (S.D. Ill. 2001) (citing

*Loyd v. Alabama Dept. of Corrections*, 176 F.3d 1336, 1341 n.9 (11th Cir. 1999)). Accordingly, a court should not deny a motion to intervene unless it is certain that the proposed intervenor cannot succeed in its case under any set of facts which could be proved under the complaint. *Reich v. ABC/York-Estes Corp.,* 64 F.3d 316, 321 (7th Cir.1995).

1.     *Timeliness of the motions*

The Seventh Circuit has held that Courts should evaluate whether an application to intervene is timely according to a reasonableness standard. *People Who Care v. Rockford Bd. of Educ.*, 68 F.3d 172, 175 (7th Cir. 1995) ("Requiring potential intervenors to be reasonably diligent in learning of a suit that might affect their rights, and upon learning of such a suit, to act to intervene reasonably promptly."). A party may not intervene if it dragged its heels after learning of its interest in a lawsuit. *Nissei Sangyo Am., Ltd. v. United States*, 31 F.3d 435, 438 (7th Cir. 1994). There are four factors that a court must consider in assessing timeliness: (1) when the intervenor knew or should have known of his interest in the case; (2) whether the delay caused any prejudice to the original parties; (3) whether the intervenor would suffer any prejudice if his motion is denied; and (4) any usual circumstances. *Id*.

The City of Chicago, the Coalition, and Wendella seek to intervene in the current proceeding while the case is at its earliest stages. Plaintiffs filed their complaint on July 19, 2010, and moved for the entry of a briefing schedule on the motion for preliminary injunction on July 21. The proposed intervenors promptly moved to intervene on July 27 (City of Chicago), August 4 (the Coalition), and August 5 (Wendella). The Court has not yet issued any substantive decisions, and the proposed intervenors were present in court on August 16, 2010, at the Court's only status hearing to date. For these reasons, the Court finds that each of the proposed intervenors have sought to intervene in a timely manner. See, *e.g.*, *Miami Tribe*, 206 F.R.D. at

241 (finding the intervenor's motion timely because it was filed shortly after the commencement of the lawsuit and before the defendants had answered the complaint).

2.    *Interests of the proposed intervenors*

The Seventh Circuit requires a prospective intervenor to demonstrate that its interest relating to the property or transaction which is the subject of the action is a "direct, substantial, [and] legally protectable" one.  See *Sec. Ins. Co. of Hartford*, 69 F.3d at 1380.  Consistent with the language of the Rule itself – which requires only that the interest be "related to" the property or transaction at issue – the Seventh Circuit has defined "interest" as something more than a mere "betting" interest (*Reich v. ABC/York Estes Corp.,* 64 F.3d 316 (7th Cir.1995)), but less than an actual property right (*United States v. City of Chicago,* 870 F.2d 1256, 1260 (7th Cir.1989)).  The Seventh Circuit also noted that whether an applicant has "an interest sufficient to warrant intervention as a matter of right is a highly fact-specific determination, making comparison to other cases of limited value." *Sec. Ins. Co of Hartford*, 69 F.3d at 1380; see also *Reich,* 64 F.3d at 321; *Shea v. Angulo,* 19 F.3d 343, 349 (7th Cir. 1994) (citing *United States v. Pitney Bowes, Inc.,* 25 F.3d 66 (2d Cir. 1994)).  In addition, the Advisory Committee Notes to the 1966 Amendment to Rule 24 (which fundamentally changed the law pertaining to intervention (see *San Juan County, Utah v. United States*, 503 F.3d 1163, 1188-89 (10th Cir. 2007) (en banc)) underscore the flexible nature of the inquiry:  "If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene."  See also *Ceres Gulf v. Cooper*, 957 F.2d 1199, 1203 n.10 (5th Cir. 1992) ("The 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process").

5

In order to assess whether the proposed intervenors have an interest "relating to the property or transaction" at issue, the Court first must attempt to define the relevant property or transaction. Based on the Court's initial review of the voluminous paper that already has been filed in this action, it appears that the property or transaction at issue can be described as the operation of the navigational and water control infrastructures within the CAWS that links Illinois waters to Lake Michigan and other connected waters.

a.    City of Chicago

The City of Chicago is far and away the largest municipality in the region. Although the City does not operate or control the navigational or water control infrastructure that is the subject of the Plaintiffs' complaint, the Chicago Locks and significant portions of the Chicago River, the Chicago Sanitary and Ship Canal, and the North Shore Channel are located within the City of Chicago's limits. In addition, Lake Michigan is the sole source for the City's municipal potable water supply.

The City has articulated three interests in the subject matter of this action: 1) to ensure that the Chicago police and fire departments' operations are not disrupted and that they are able to fully utilize the navigational locks and/or sluice gates to perform their emergency response, law enforcement, and homeland security duties; 2) to ensure that the sluice gates can continue to be used to maintain water quality and avert flooding in and along the CAWS so as to protect public health and safety; and 3) to ensure that the City's long-term efforts and plans to enhance the waterfront along the CAWS are not disrupted by decreased water quality or increased flooding.

The City promotes the general health, safety, and welfare by providing essential police and fire services; helping ensure that water quality is maintained and floods are averted; and

making land-use planning, investment, and regulation decisions. The City has demonstrated that its interests are direct, substantial, and capable of legal protection, as well as being closely related to and likely to be affected by the "property or transaction" placed at issue by Plaintiffs' complaint and motion for preliminary injunctive relief. Plaintiffs' principal challenge under the "interest" prong is their assertion that the City lacks a legally protectable interest because the relief sought by Plaintiffs is "consistent with the protection of the public health and safety." However, notwithstanding the fact that Plaintiffs have carved out a "public health and safety" exception from their requested relief, the scope of that exception is subject to varying constructions and implementation, which warrants the City's involvement. Plaintiffs' opposition to the motion might carry the day if it were certain that Plaintiffs and the City agree on the scope of "relief that is consistent with the protection of the public health and safety," but there is no indication that they are on the same page in that regard – or that it is even possible at this early stage of the case to know.

b.     The Coalition

The Coalition, an unincorporated group of trade associations, maintains that it has members whose continued financial existence is directly threatened by the requested injunction. The Coalition includes the American Waterways Operators, the Illinois Chamber of Commerce, the Chemical Industry Council of Illinois, the Illinois Manufacturer's Association, the Illinois Farm Bureau, and the Illinois Corn Growers Association. The AWO is the national trade association for the tugboat, towboat, and barge industry that operates in the inland waterways, along the coasts and in the Great Lakes. About twenty AWO members transit through, or are based on, the CAWS, and/or transit through the O'Brien and/or Chicago locks. The Illinois Chamber is the state's oldest, largest broad-based business advocacy group serving numerous

businesses throughout the state.  The Chemical Industry Council of Illinois is a statewide trade association whose goals are to ensure the viability and promote the interests of the chemical industry.  The Illinois Manufacturing Association monitors legislative and regulatory activities in Illinois that affect manufacturing and its related sectors and represents its members on issue that are important to its industrial base.  The Illinois Farm Bureau seeks to improve the economic well being of the agricultural industry through local and state wide programs.  The Illinois Corn Growers Association represents the corn growing segment of the agricultural community.

The Coalition's members represent significant manufacturing, industrial, water transportation, and agricultural businesses in the State of Illinois.  These trade associations have numerous member companies which rely on the CAWS for navigation either to ship raw materials or finished or repackaged materials, to ship grain, or to operate the barges and terminal facilities on which these shipments depend.  Many of these businesses operate solely by virtue of the CAWS and would either require significant additional capital projects or be unable to operate in the absence of CAWS navigation.  In addition, the trade associations represent other businesses which rely on companies on the CAWS for raw materials, finished products or other economic benefits and which faced increased prices if they have to find alternatives suppliers. To summarize, the Coalition's interest is in preserving the viability of the economic investments in businesses through the continued ability to navigate the CAWS.  If Defendants were ordered to close the locks at the O'Brien Lock and Dam and the Chicago River Controlling Works, as Plaintiffs request in their complaint and motion for preliminary injunction, the Coalition's members would, at a minimum, lose significant business, if not cease operations entirely.  These interests are sufficient to satisfy the second prong of the Rule 24(a)(2) inquiry.  See, *e.g.*, *Sierra Club v. Espy*, 18 F.3d 1202, 1207 (5th Cir. 1994) (finding that movants with substantial

"economic" and "financial" interests at stake satisfied the "interest" prong); *Mille Lacs Band of Chippewa Indians v. State of Minnesota*, 989 F.2d 994, 998 (8th Cir. 1993) (concluding that proposed intervenors whose property values may be affected had recognized interests in the subject matter of the litigation); see also *Forest Conservation Council v. U.S. Forest Service*, 66 F.3d 1489, 1494 (9th Cir. 1995) ("when, as here, the injunctive relief sought by plaintiffs will have direct, immediate, and harmful effects upon a third party's legally protectable interests, that party satisfies the 'interest' test").

c.   <u>Wendella</u>

Wendella has been operating in Chicago since 1962, carrying passengers in its water taxis. All of Wendella's tours originate from its docks on the North Bank of the main branch of the Chicago River, located at the Northwest Corner of the Michigan Avenue Bridge.  Because all of Wendella's docks are located on the Chicago River, it must go through the Chicago Lock to enter and return from Lake Michigan.  Wendella claims that its business operations are dependant on the continuing "show and go" access to Lake Michigan through the lock facilities at the Chicago River Controlling Works (the Chicago Lock) located at the confluence of Lake Michigan and the Chicago River.  Indeed, Wendella's sole source of revenue is its boat tours, charters, and water taxis.  In addition, Wendella's 150 employees, as well as more than 150 vendors and subcontractors, depend upon their jobs and income.  Wendella's economic livelihood, as well as the livelihood of its employees, subcontractors, and vendors, is a direct and substantial interest, because any attempt to close or limit the operation of the Locks may shut down Wendella's business and force it to lay off the majority of its employees.   As with the Coalition, these substantial economic interests are sufficient to satisfy the second prong of the test for intervention as of right.

### 3. *Effect of disposition on ability to protect interests*

For many of the reasons stated in assessing each proposed intervenors' interests, the disposition of this action, as a practical matter, may impede the ability of each of the proposed intervenors to protect its interests. For instance, depending upon the extent to which the Court were to grant the relief requested by Plaintiffs, the City of Chicago's police and fire departments might be required to make major immediate and long-term modifications to their operations, infrastructure, and personnel. Recreational users of the CAWS and residents and businesses along the CAWS might be subjected to degraded water quality and increased flooding. The City's past efforts and investments in improving its riverfronts might be undermined and suffer reversals, while future plans and projected investments to enhance its riverfronts might require major revisions. All of these interests may be affected depending on the scope of the public health and safety exception that remains nebulous at this stage of the litigation. With respect to the Coalition, closure of the O'Brien Lock and Dam and the Chicago River Controlling Works could cause the loss of business and financial gains for several of the Coalition members. In the same vein, the permanent closure of the Chicago Lock likely would shut down Wendella's business. All of this could result from a court order directed at parties other than the proposed intervenors, and as to which the proposed intervenors may have little legal recourse after the fact.

### 4. *Adequacy of representation by Defendants*

The last factor to consider is whether the proposed intervenors' interests are adequately represented by the existing parties to the litigation. The original burden of showing inadequate representation rests on the applicant for intervention. See, *e.g., Natural Resources Defense Council v. Costle,* 561 F.2d 904, 911 (D.C. Cir. 1977). This burden, however, is not onerous. The applicant need only show that representation of its interest "may be" inadequate, not that

representation will in fact be inadequate. See *Trbovich v. United Mine Workers,* 404 U.S. 528, 538 n. 10 (1972); *see also Federal Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing District*, 983 F.2d 211, 216 (11th Cir. 1993) ("The proposed intervenors' burden to show that their interests *may be* inadequately represented is minimal") (emphasis in original); *Miami Tribe*, 206 F.R.D. at 243 (finding that proposed intervenor makes a sufficient showing under Rule 24(a) if it demonstrates that the existing parties' interests "are not completely identical to and may come into conflict with its own."). Further, the proposed intervenor "should be treated as the best judge of whether the existing parties adequately represent his or her interests, and * * * any doubt regarding adequacy should be resolved in favor of the proposed intervenors." *Miami Tribe of Okla.*, 206 F.R.D. at 243; *see also Falls Chase*, 983 F.2d at 216. City's

a.  City of Chicago

The original Defendants manage and control portions of the infrastructure and waterways that are the subject matter of this action, and the City's operations are significantly affected by Defendants' operations. However, Defendants are not responsible for promoting the general health, safety, and welfare of the citizens of Chicago in the way that the governing local municipality is. Defendants' interests are broader and extend well beyond the city limits. In fact, Defendants' mandate and concerns are regional (District) and national (Corps) in scope. True, at this stage of the case Defendants have advanced arguments that if not identical, at least are consistent with the City's interest in ensuring its ability to provide emergency services and flood control and look after the local economy. Both seem to take the position that locks and sluice gates should continue to be operated as they currently are. But it seems clear that the situation is fluid, both in regard to the situation in the waters themselves and the science that bears on the issues in the case. Given those circumstances, Defendants may feel the need to shift

their positions at any time as their assessment of the proper course of action from a national or regional perspective changes. Because of the City's broad police power authority and responsibility, it is uniquely situated to both represent interests not currently before this Court and provide important input into the effects of any remedy fashioned by this Court.

>    b.   The Coalition and Wendella

Although Defendants are not directly adverse to the Coalition and Wendella, their interests are not completely identical. It is well-settled that regulatory agencies generally do not adequately represent the "narrow, parochial interests" of regulated entities, because agencies are charged with broad duties to the public. *Forest Conservation Council v. U.S. Forest Service*, 66 F.3d 1489, 1499 (9th Cir. 1995); see also *Chiglo v. City of Preston*, 104 F.3d 185, 187-88 (8th Cir. 1997) ("the government only represents the citizen to the extent his interests coincide with the public interest. If the citizen stands to gain or lose from the litigation in a way different from the public at large, the *parens patriae* would not be expected to represent him"). In this case, Defendants have a broad duty to minimize the risk of migration of Asian Carp through the CAWS into the Great Lakes. As the Supreme Court explained in *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528 (1972), a government agency cannot be characterized as able to represent adequately the interests of an intervenor even if the agency has substantially similar interests but also has a statutory charge to pursue potentially conflicting goals as well. 404 U.S. at 538-39 ("the Secretary has an obligation to protect the 'vital public interest in assuring free and democratic elections that transcend the narrower interest of the complaining union member'").

Defendants clearly have interests in this case that differ to some degree from both Wendella's and the Coalition's because Defendants' priority is to prevent migration of Asian

carp into the Great Lakes while the Coalition's primary goal is to protect the economic viability

of its members through their continued ability to navigate CAWS and the Great Lakes and

Wendella's is to protect the financial viability of its business. There is no guarantee that

Defendants' determination of what is appropriate to prevent the migration of Asian Carp into the

Great Lakes will be acceptable to the Coalition and its members or Wendella. Thus, Defendants

will not necessarily share all of the same interests in defending its decision not to close the locks

with that of these proposed intervenors. Defendants may well face a potential conflict of interest

were they to try to represent both the general interest of the public and the financial interests of

the Coalition and Wendella. For these reasons, it is possible that Defendants' protection of the

Coalition's interest may become inadequate. See *Miami Tribe of Okla.*, 206 F.R.D. at 243; see

also *Mille Lacs Bank*, 989 F.2d at 999-1001 (recognizing that when a potential intervenor's

interest has even the potential to conflict with the government's broad duty to benefit the general

public, it is possible that the government's protection of the movant's interests may become

inadequate and the minimal burden for intervention is met); *Conservation Law Found. of New

England, Inc. v. Mosbacher*, 966 F.2d 39, 44-45 (1st Cir. 1992) (same); *Dimond v. District of

Columbia*, 792 F.2d 179, 192-93 (D.C. Cir. 1986) (same).

Plaintiffs submit that *United States v. 36.96 Acres of Land*, 754 F.2d 855 (7th Cir. 1985),

stands for the proposition that where a government entity has a statutory duty, a private entity

may not intervene on the government's behalf. In *36.96 Acres of Land*, the federal government

brought a condemnation action, which eventually was abandoned by the United States. The

Court held that intervention was unwarranted because only Congress and its delegate can

exercise the power of eminent domain. Under those circumstances, the Seventh Circuit found

that where a proposed intervenor in a federal condemnation suit seeks to assert a position on

behalf of the government, intervention must be denied. Here, Wendella and the Coalition are not advancing legal arguments on behalf of the Corps – they are offering arguments on their own behalf to protect their own legal rights that may be adversely affected by the relief sought by Plaintiffs. *Wade v. Goldschmidt*, 673 F.2d 182 (7th Cir. 1982), likewise is inapposite. In that case, the plaintiff brought suit to require the defendant, a federal cabinet secretary, to comply with certain federal statutes. In view of the nature of the relief sought, the court held that "the governmental bodies charged with compliance [with those statutes] can be the only defendants." *Id*. at 185. Here, by contrast, Plaintiffs have sued, *inter alia*, under a public nuisance theory, and the relief that they seek goes far beyond compelling compliance with a specific statutory duty. Finally, this case is distinguishable from the fairly common scenario in which a lawsuit is filed against a state or a state official to challenge the constitutionality of a statute. In that scenario, the Attorney General alone is presumed to be an adequate representative because he or she is charged by law with defending the statute – and thus upholding the interests of all of those who wish to defeat the challenge. See, *e.g.*, *American Nat'l Bank & Trust Co. v. City of Chicago*, 865 F.2d 144, 147-48 (7th Cir. 1989).

Finally, it is worth noting that Wendella has retained experts because of its concern that the Corps could have ordered lock closures. By retaining experts in the fields of eDNA in water and Asian Carp biology, Wendella has shown its long recognition of an interest in the matters in dispute. But more to the point of adequacy of representation, according to Wendella, one of its experts – who developed the eDNA research that Dr. Lodge utilized – questions the scientific work done by Dr. Lodge on behalf of the Corps. Additionally, in order to test the opinions of Duane Chapman (relied on by both Plaintiffs and Defendants), Wendella retained an expert in the science of Asian Carp in Lake Michigan. The fact that the opinions of Wendella's experts

conflict with Dr. Lodge's findings and Duane Chapman's testimony, and the fact that Defendants rely on Lodge and Chapman, puts Wendella and Defendants in conflict, at least with respect to the harm issue.

## III.    Conclusion

All three proposed intervenors filed timely motions to intervene and have demonstrated protectable interests that would not be adequately protected by the existing parties to this litigation. While Plaintiffs are correct in suggesting that opening the door to "innumerable parties" would risk delay and create a potentially unmanageable situation, there is little danger of that occurring, given that any additional motions to intervene likely would be untimely, at least for purposes of intervening at the preliminary injunction stage.[1]

---

[1] Plaintiffs raise a legitimate concern about the possibility of duplicative or cumulative argument and presentation of evidence given the array of two original Defendants and three proposed Intervenor-Defendants. The Court echoes that concern – particularly in view of the volume of briefs, affidavits, exhibits, and other written materials that already have been filed – and reiterates the importance of streamlining the oral arguments and any testimony to avoid belaboring points that are adequately addressed in the written submissions or in prior argument or testimony. The Court anticipates the parties' cooperation in this endeavor and of course reserves the right to intervene to ensure compliance. See *United States v. Reserve Mining Co.*, 56 F.R.D. 408, 419 (D. Minn. 1972) (noting that the court "will expect and require that its orders curtailing presentations will avoid repetition"); Moore's Federal Practice 3d S 24.03(5)(b), at 24-53 (observing that "(s)ome courts restrict the admission of evidence introduced by the intervenor if it is likely to be duplicative"); Fed. R. Evid. 611(a).

Therefore, for the reasons set forth above, the Court grants all three motions to intervene [34, 54, 63] and the City of Chicago, the Coalition, and Wendella are given leave to intervene as Defendants in this action. [2] This case remains set for oral argument on August 23, 2010, at 9:30 a.m.

Dated: August 20, 2010

_____
Robert M. Dow, Jr.
United States District Judge

---

[2] Had the Court not concluded that each of the proposed intervenors satisfied the criteria for intervention as of right, at a minimum, the Court would have allowed the proposed intervenors leave to participate broadly as *amicus curiae*. See *U.S. v. Hooker Chemicals & Plastics Corp*., 749 F.2d 968, 992 (2d Cir. 1984) (affirming judge who denied intervention to environmental groups but offered proposed intervenors an "elevated amicus status that would have enabled them to go a long way toward presenting their objections to the settlement," including allowing them to call their own witnesses and to cross-examine the witnesses) (citing *Hoptowit v. Ray*, 682 F.2d 1237, 1260 (9th Cir. 1982) (amicus given "full rights of parties to participate" by trial court)); see also Moore's Federal Practice 3d § 24.23[2], at 24-88 ("Amicus status allows the applicant to present legal argument, and, in some cases, to call and cross-examine witnesses").